**Electronically Filed
Intermediate Court of Appeals
28292
09-NOV-2011
11:14 AM**

NO. 28292

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


McCANDLESS LAND AND CATTLE COMPANY, a Hawai'i limited partnership; ELIZABETH M. STACK; NOHEA M. SANTIMER, MOANI M. ZABLAN and NOENOE M. LINDSEY as Trustees of the Les Marks Revocable Living Trust acting in their fiduciary and not in their individual capacities, Plaintiffs/Counter-Defendants/Appellees,
v.
D. KEALOHAPAUOLE, et al., Defendants,
and
CLARENCE A. MEDEIROS, JR., Defendant/Counter-Claimant/Appellant,
and
PANSY MEDEIROS, et al., Defendants/Counter-Claimants/Appellants,
and
ROSE ELAINE ABBOTT, CURTIS AHU, EUGENE AHU, JOHN R. AHU, ROBERT AHU, DEBORAH H. LEE, LORRAINE YAHNEL, HENRY APIO, MARY APIO, ELAINE LEINAALA DAILEY, KIMELA KUKANE KALUA, HATTIE IWALANI KAUHI and LOUISE APIO LEOPOLDO, Defendants/Appellants,
and
JOSEPH KANAI KALAMA, through his successor in interest, KALAMA HUI, LLC, Defendant/Appellant,
and
GENEVIEVE ILIMA ALANI SHITO, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
KONA DIVISION
(CIVIL NO. 92-0185K)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Leonard, JJ.)


This case involves a long and complicated action brought by Plaintiffs-Appellees McCandless Land and Cattle Company, a Hawai'i limited partnership; Elizabeth M. Stack; and Nohea M. Santimer, Moani M. Zablan, and Noenoe M. Lindsey, as

Trustees of the Les Marks Revocable Living Trust acting in their fiduciary and not in their individual capacities (collectively, "McCandless") to quiet title to 7,149 acres of the Ahupua'a of Honokua located in South Kona on the Island of Hawai'i (Subject Property) and kuleana within the Subject Property. In 1992, McCandless filed a quiet title complaint in the Circuit Court of the Third Circuit (Circuit Court) against numerous defendants. A large number of defendants answered and some asserted counterclaims and cross-claims.

In 1997, the Circuit Court held a jury trial on a portion of the litigation, and the jury returned answers to six special verdict forms and two supplemental special verdict forms. The Circuit Court thereafter issued a partial judgment and orders that gradually resolved many of the outstanding issues in the case. In 1999, the Circuit Court appointed a Commissioner to recommend a plan to partition the Subject Property. Through the Commissioner's assistance, a plan for partitioning the Subject Property was developed and approved by the Circuit Court. In 2006, the Commissioner filed final, an amendment to the final, and supplemental reports. The Circuit Court filed an order and judgment allocating costs with respect to the partition (Order and Judgment Allocating Costs) on October 30, 2006. The Circuit Court filed a final judgment and decree quieting title (Final Judgment) on November 22, 2006, and an amended final judgment and decree quieting title (Amended Final Judgment) on March 19, 2007.

In this Memorandum Opinion, we address three separate appeals brought by:

1.   Defendant-Appellant Joseph Kanai Kalama (Kalama), through his successor in interest, Kalama Hui, LLC (Kalama Hui);[1]

---

[1] The record reflects that Joseph Kanai Kalama irrevocably assigned all of his beneficial interest in this case, including any rights of appeal, to the law firm of Hu and Tsuji, who had been representing Kalama. The law firm of Hu and Tsuji, a limited liability law company, subsequently assigned all of its beneficial interest in this case to Kalama Hui LLC.

2.     Defendants-Appellants Pansy Medeiros, Clarence A. Medeiros, Jr., Lorna Takizawa, Violet Mamac, Roland Medeiros, David Medeiros, Jim Medeiros, Albert Medeiros, Alfred Pogtis, William Puou, II, William Puou, III, Rodney J. Puou, Michael Puou, Aaron Puou, Henry Hua, Jr., Yvonne Leslie, Julia Kohltfaber, Nancy Durmas, Solomon Lazaro, Roberta Lazaro-Johnson, Isaac Kamauu Griffin, Maunalei Jeanette Griffin, Nathanial James Makai Griffin, George Hua, Connie Hua, Edward Hua, Alicia Hua, Richard Hua, Charles T. Hua, Kathleen Yamamoto, Harry Yamamoto, Edith Armstrong, Adeline Neil, Joan Shaw, Rosabel Camacho, Herbert Elderts, Jr., and Rachel Elderts (collectively, the "Medeiros Appellants");[2]

3.     Defendant-Appellant Clarence A. Medeiros, Jr. (Clarence Junior), who is also one of the Medeiros Appellants.[3]

Because each appeal involves discrete issues, we will separately discuss each appeal and the facts relevant to that

---

[2] The Medeiros Appellants are generally part of a larger group referred to herein as the "Medeiros Defendants." Clarence A. Medeiros, Sr., who passed away during the Circuit Court proceedings, was one of the Medeiros Defendants but is not one of the Medeiros Appellants. In addition, certain individuals who disclaimed any interest in the Subject Property are part of the Medeiros Defendants, but are not included in the Medeiros Appellants. The Medeiros Defendants are: Clarence A. Medeiros, Sr., Pansy Medeiros, Lisa Hua, Henry Hua, Jr., Olive Hua, Evonne Hua, aka Yvonne Leslie, George Hua, Sr., Clarence A. Medeiros, Jr., Albert Medeiros, Alfred Pogtis, Jr., Charles Hua, Jr., Bernard Alani, Jr., Aaron Puou, Albert Mamac, Janet Alani, Kathy Medeiros, Koichi Takizawa, Lorna Takizawa, Melae Hua, Michael Puou, Nellie Medeiros, Rodney J. Puou, Roland Medeiros, Violet Mamac, William Lazaro, William Puou, Jr., Carmen Pogtis, Carol Medeiros, Darlene Puou, David Medeiros, Gwen Puou, Jeana Medeiros, Jim Medeiros, Lavaina Puou, Lorraine Medeiros, Weston Leslie, William Puou, III, Alicia Hua, Richard Hua, Connie Hua, Edward Hua, Kathleen Yamamoto, Norman Yamamoto, Joan Shaw, Herbert Elderts, Sr. (deceased), Herbert Elderts, Jr., Katherine Mapuana Elderts, Rosabella Hua, aka Rosabella Yamamoto deceased), Julie Hua, aka Julian Hua, aka Julia Kohltfaber, The Estate of Annie Ah Sing Weeks, aka Annie Hua, Estate of Mary Rivera, Richard Allen Gomes, and Flora Gomes.

[3] Appeals were also filed by: (1) Defendants-Appellants Rose Elaine Abbott, Curtis Ahu, Eugene Ahu, John R. Ahu, Robert Ahu, Deborah H. Lee, Lorraine Yahnel, Henry Apio, Mary Apio, Elaine Leinaala Dailey, Kimela Kukane Kalua, Hattie Iwalani Kauhi, and Louise Apio Leopoldo (collectively, the "Abbott Defendants") and (2) Defendant-Appellant Genevieve Ilima Alani Shito (Shito). However, stipulations to dismiss the appeals by the Abbott Defendants and Shito were subsequently filed, and those appeals were dismissed.

appeal.[4]  As set forth in greater detail below, we hold against Kalama Hui in its appeal, in favor of the Medeiros Appellants in their appeal, and in favor of Clarence Junior in his appeal.

## I.   The Kalama Hui Appeal

The jury returned a special verdict which found that Kalama, Annie Tai See, and Albert Pi (collectively, the "Kaikaina Defendants") owned 2 acres of the Subject Property by paper title and 16.9 acres by adverse possession.  The jury's special verdict also described the location of the acreage held collectively by the Kaikaina Defendants through adverse possession.  McCandless moved for judgment notwithstanding the verdict, challenging the jury's special verdict that the Kaikaina Defendants had acquired the 16.9 acres, as described, by adverse possession.  The Circuit Court granted McCandless's motion and awarded the property in dispute to McCandless.

On appeal, Kalama Hui argues that the Circuit Court erred in (1) granting McCandless's motion for judgment notwithstanding the verdict; and (2) ruling that judgments entered in two prior lawsuits barred Kalama's claim for adverse possession.[5]  We affirm the Circuit Court's decision to grant McCandless's motion for judgment notwithstanding the verdict and to award the property in dispute to McCandless.

## A.   Background Facts

### 1.

Victoria Kamamalu was granted title to the Subject Property in the Great Mahele.  Title thereafter passed to Bernice Pauahi Bishop, and the executors of her will conveyed title to J.W.L. Lapauila Kahuna'aina.  In 1890, Mr. Kahuna'aina conveyed title to the Subject Property to a 20-member hui that included Kaikaina, who received a 1/20 share in the Subject Property.  At the time of this conveyance, it was believed that the Subject

_____

[4] The Honorable Riki May Amano presided over the proceedings relevant to the appeals by Kalama Hui and Clarence Junior.  The Honorable Glenn S. Hara presided over the proceedings relevant to the Medeiros Appellants' appeal.

[5] Annie Tai See and Albert Pi did not appeal.

Property, the Ahupua'a called Honokua, consisted of approximately 6,579 acres, with a 1/20 share consisting of approximately 328.9 acres. Thus, the deed from Mr. Kahuna'aina to Kaikaina referred to the Subject Property as containing an area of "6,579 acres more or less" and the 1/20 share as consisting of 328 9/20 acres "more or less." However, a modern survey of the Subject Property revealed that it encompasses 7,129.22 acres, resulting in 357.46 acres per 1/20 share.

Kaikaina made a number of conveyances of his 1/20 share as follows:

1.    By deed dated October 9, 1890, Kaikaina conveyed 10 acres to D. Kealohapauole, who in turn conveyed the ten acres to J. Apio. J. Apio died intestate, and a number of his heirs subsequently conveyed their interest in the 10 acres to L.L. McCandless, the predecessor in interest of McCandless.

2.    By deed dated March 1, 1899, Kaikaina conveyed 340 acres of his 1/20 share in the Subject Property to Mrs. Elizabeth K. Amalu (1899 Amalu Deed). The 1899 Amalu Deed refers to the 340 acres as 40 acres of farm land above the Old Government Road and the remaining 300 acres as being Kaikaina's undivided interests in the Subject Property. The property conveyed by the 1899 Amalu Deed was eventually conveyed to Clarence A. Mederios, Sr., in 1989.

3.    By deed dated February 13, 1911, Kaikaina conveyed 2 acres of his 1/20 share in the Subject Property to Beni Paauhau.

4.    By deed dated December 3, 1923 (1923 Deed), Kaikaina conveyed his "entire interest" in the Subject Property as well as "other interests to which I am entitled here in the Territory of Hawaii" to his daughter, Monika Kalahikiola Paauhau (Monika Paauhau). Monika Paauhau was married to J.K. Paauhau. By deed dated August 26, 1930 (1930 Deed), Monika Paauhau and J.K. Paauhau deeded all of their "right, title and interest" in and to the Subject Property and any kuleana therein to L.L. McCandless, reserving, however, a life estate for Monika Paauhau

5

and J.K. Paauhau in approximately 4 acres of the Subject Property.

After the 1923 Deed, Monika Paauhau, J.K. Paauhau, and their family resided on and used a portion of the Subject Property.  J.K. Paauhau died in 1939.  In 1940, Monika Paauhau filed an action against L.L. McCandless for cancellation of the 1930 Deed in Paauhau v. McCandless, Equity No. 102 (hereinafter, "Equity No. 102"), alleging that the 1930 Deed was obtained through fraud.  In her petition, Monika Paauhau, asked the court to order L.L. McCandless "to produce and deliver up said deed of conveyance to be cancelled and . . . to re-convey the interest in said premises of [Monika Paauhau] to [Monika Paauhau]."  L.L. McCandless filed an answer to the petition in which he denied that the 1930 Deed had been obtained by fraud and asked that the petition be dismissed.  Monika Paauhau died on March 1, 1947, while Equity No. 102 was still pending.  On August 19, 1949, Equity No. 102 was dismissed with prejudice for "want of prosecution."

After Monika Paauhau's death, certain children of Monika Paauhau and J.K. Paauhau and other Paauhau family relatives continued to reside on and occupy structures on a portion of the Subject Property until 1955.  On August 1, 1955, L.L. McCandless's successors in interest filed a complaint to evict the Paauhau family members as trespassers in Marks v. Generalao, C.A. No. 103 (hereinafter, "Civil No. 103").  The Paauhau family members did not appear in the case and default judgment was entered against them on October 3, 1955.  Subsequently, a writ of possession was issued on October 14, 1955, and the Paauhau family members were evicted.

2.

Prior to trial in this case, the Medeiros Defendants filed a motion for partial summary judgment with respect to the 1/20 share in the Subject Property initially conveyed to Kaikaina.  The Medeiros Defendants sought summary judgment quieting title in the name of Clarence A. Medeiros, Sr., to all

of the original 1/20 Kaikaina share, except for the 10 acres conveyed by Kaikaina to D. Kealohapauole in 1890, kuleana interests, and the State of Hawai'i's reservations of rights. The Medeiros Defendants' motion was based on the 1899 Amalu Deed. The Medeiros Defendants argued that by virtue of the 1899 Amalu Deed, Kaikaina had conveyed all of his 1/20 share in the Subject Property that remained after the 10 acre conveyance to D. Kealohapauole. This left Kaikaina with no interest in the Subject Property to convey to his daughter, Monika Paauhau, through the 1923 Deed, except for his kuleana holdings. The Medeiros Defendants asserted that the property conveyed by Kaikaina in the 1899 Amalu Deed was eventually conveyed to Clarence A. Mederios, Sr.

McCandless opposed the Medeiros Defendants' motion. McCandless argued, among other things, that because it was believed at the time of the 1899 Amalu Deed that a 1/20 share only consisted of 329.9 acres, Kaikaina could not have transferred 340 acres of his 1/20 share to Elizabeth K. Amalu. After his previous conveyance of 10 acres to D. Kealohapauole, Kaikaina only had approximately 320 shares to convey to Elizabeth K. Amalu. McCandless argued that because of this discrepancy, the 1899 Amalu Deed was ambiguous and it was reasonable to construe the 1899 Amalu Deed as only conveying 300 acres of Kaikaina's interest.[6] McCandless contended that there were triable issues of fact, including what interest Kaikaina had to convey to his daughter through the 1923 Deed, that precluded the grant of summary judgment in favor of the Medeiros Defendants.[7]

---

[6] As previously noted, the 1899 Amalu Deed refers to the 340 acres as 40 acres of farm land above the Old Government Road and the remaining 300 acres of Kaikaina's undivided interests in the Subject Property.

[7] In a trial position statement, McCandless subsequently argued that because Kaikaina conveyed his interest in the Subject Property to his daughter in 1923, there must have been an unrecorded conveyance of the Amalu interest back to Kaikaina after the 1899 Amalu Deed and before the 1923 Deed.

Annie Tai See and Albert Pi, who along with Kalama were descendants of Monika Paauhau, also opposed the Medeiros Defendants' motion for partial summary judgment regarding the 1/20 Kaikaina share.  The Circuit Court entered an order partially denying and partially granting the Medeiros Defendants' motion.  The Circuit Court's order denied the motion, except that it granted the motion as to Annie Tai See, Albert Pi, and Lovey Scott and as to all parties who did not appear at the hearing on the motion or at a conference the Circuit Court had scheduled. Kalama was among the parties against whom the Medeiros Defendants' motion was granted by default.  The Circuit Court, however, subsequently granted Kalama's motion to set aside the default.[8/]

3.

The case proceeded to trial on the question of title regarding a number of the original 1/20 shares, including Kaikaina's 1/20 share.  At the conclusion of the trial, the jury made numerous findings through special verdicts.  The jury found that it had not been proven that McCandless or the Medeiros Defendants, or their predecessors, had acquired title to any portion of the Subject Property by adverse possession.  The jury further found that it had been proven that the Kaikaina Defendants or their ancestors adversely possessed a portion of the Subject Property (16.9 acres) before 1956.

With respect to the Kaikaina share, which the supplemental special verdict form referred to as consisting of 328.9 acres, the jury found as follows:

_____

[8/] We note that although the Circuit Court's order purports to grant the Medeiros Defendants' Motion for partial summary judgment as to Annie Tai See and Albert Pi, the Circuit Court permitted them to participate in the trial along with Kalama.  The Circuit Court also submitted special verdicts to the jury requesting that the jury determine the interests held by Kalama, Annie Tai See, and Albert Pi, or their predecessors, with respect to the original 1/20 Kaikaina share.  The parties do not explain this discrepancy.

State the number of acres (totaling 328.9) that each of the following parties now own in Honokua:

| | | |
|---|---|---|
| Defendant Henry Apio's heirs[9/] | 1 | acres |
| [Medeiros Defendants] | 300 | acres |
| [Kaikaina Defendants], collectively: | | |
| by paper title | 2 | acres |
| by adverse possession | 16.9 | acres |
| [McCandless] | 9 | acres |

The jury described the location of the property that the Kaikaina Defendants had acquired collectively through adverse possession as "House Lots (2) and land N. of stone wall and S. of Public Trail and Makai of Government rd. as shown on Map # 382-2 -- (South Kona Belt rd.)." The jury also found that the claims of the Kaikaina Defendants or their predecessors to the Kaikaina share had been disposed of in Equity No. 102 and Civil No. 103, but that this did not mean that the Kaikaina Defendants have no present interest in the Subject Property.

Based on the jury's verdicts, the Circuit Court entered a "Judgment Concerning A Portion of the Ahupuaʻa of Honokua" (Partial Judgment), which stated in pertinent part in paragraphs 12 through 14 as follows:

12. [The Kaikaina Defendants] collectively own an undivided 2.18 acres in the share of Kaikaina.

13. The Kaikaina Defendants also collectively own a portion of the [Subject Property] that consists of two house lots and all of the land located north of the stone wall, south of the public trail, and makai of the Government Road, as shown on Exhibit No. 382-2.

14. [McCandless] own an undivided 9.81 acres in the share of Kaikaina.[10/]

---

9/ Henry Apio was a heir of J. Apio to whom D. Kealohapauole had conveyed the 10 acres that he had received from Kaikaina in 1890. McCandless had apparently established that it had acquired the interests of all of J. Apio's heirs except Henry Apio.

10/ The jury's special verdicts were based on the original measurement of the Subject Property from an ancient survey which resulted in the calculation of Kaikaina's 1/20 share as 328.9 acres. A modern survey revealed that a 1/20 share was actually 357.46 acres, about a 9% increase. The Partial Judgment increased the acreage found by the jury by this percentage.

4.

McCandless filed a motion for judgment notwithstanding the verdict (JNOV Motion). In its JNOV Motion, McCandless argued that (1) the 1930 Deed together with the judgments in Equity No. 102 and Civil No. 103 established that the Kaikaina Defendants had no interest in the Subject Property through Monika Paauhau and (2) the Kaikaina Defendants had no valid adverse possession claim as a matter of law. McCandless had made similar arguments in motions for directed verdict filed before the case was submitted to the jury, which the Circuit Court had denied.

During the trial, McCandless and the Medeiros Defendants entered into a settlement agreement. Pursuant to that agreement, the Medeiros Defendants agreed to quitclaim all of their right, title, and interest in and to the Subject Property, except for certain land which McCandless agreed to convey to the Medeiros Defendants. It appears that the property that the jury had found that the Kaikaina Defendants owned by adverse possession was part of the Subject Property that the Medeiros Defendants had agreed to quitclaim to McCandless. As a result of the settlement agreement, McCandless would be entitled to this disputed property if the jury should properly have found that it was owned by either McCandless or the Medeiros Defendants.

The Circuit Court granted McCandless's JNOV Motion and entered an order, which provided in relevant part:

> 1. The jury's response to the special verdict and supplemental verdict that Defendants Joseph Kanai Kalama, Annie K. Tai See and Albert K. Pi, Jr. acquired title to an interest in the ahupua'a of Honokua by adverse possession is not supported by the credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support such a conclusion.
>
> 2. Monika Paauhau v. L.L. McCandless (Equity No. 102, Third Circuit Court) and A. Lester Marks, et al. v. Agnes Generalao (Civil No. 103, Third Circuit Court) were cases in which decisions on the merits were entered. A dismissal with prejudice for failure to prosecute is an adjudication on the merits. Lundburg v. Stinson, 5 Haw. App. 394, 400, 695 P.2d 329, 334 (1984), recon denied, 5 Haw. App. 682, 753, P.2d 253, (1984), cert. denied, 67 Haw. 686, 744 P.2d 781 (1985). The claims in the Equity No. 102 and Civil No. 103 included the issue of the validity of a deed dated August 26, 1930 from Monika and J.K. Paauhau to L.L. McCandless (Exh. 286). The parties to Equity No. 102

10

and Civil No. 103 were in privity with the parties in the instant case. The result of the decisions in Equity No. 102 and Civil No. 103 was that the deed from Monika and J.K. Paauhau to L.L. McCandless (Plaintiffs' Exh. 286) was valid and enforceable.

3. The jury's finding that Defendants Joseph Kanai Kalama, Annie K. Tai See and Albert K. Pi, Jr. or their predecessors adversely possessed a portion of the ahupuaʻa of Honokua before 1956 is not supported by clear and positive proof that the elements of adverse possession had been proven. Morinoue v. Roy, 86 Haw. 76, 81-84, 949, P.2d 944, 949-52 (1997). Neither Defendants Joseph Kanai Kalama, Annie K. Tai See and Albert K. Pi, Jr. nor their predecessors were in adverse possession of any portion of the ahupua'a of Honokua for a period of ten (10) years before 1956. Neither Defendants Joseph Kanai Kalama, Annie K. Tai See and Albert K. Pi, Jr., nor their predecessors provided notice of their intent to claim title by adverse possession as required by City and County of Honolulu v. Bennett, 57 Haw. 195, 209-11, 552 P.2d. 1380, 1390-91 (1976).

4. The Supplemental Special Verdict Form Question (Kaikaina Share) No. 15 asked the jury "Does your answer to question number 14 mean that Defendants Joseph Kanai Kalama, Annie K. Tai See and Albert K. Pi, Jr. have no present interest in Honokua?" The jury's response was "No". The jury's answer to Question 15, if and to the extent it implies that those named defendants acquired an interest in the ahupuaʻa as successors in interest to the paper title held by Monika and J.K. Paauhau, is inconsistent with the result of the decisions in Equity No. 102 and Civil No. 103, which are binding upon those named defendants under the doctrine of res judicata.

IT IS THEREFORE the decision and order of this Court that the Judgment Concerning a Portion of the Title to the Ahupua'a of Honokua is directed to be amended. Specifically paragraphs 13 and 14 are set aside. The Amended Judgment shall omit paragraph 13 and shall state that [McCandless] own an undivided 27.19 acres in the share of Kaikaina. The paragraphs of the Judgment Concerning a Portion of the Title to the Ahupua'a of Honokua, other than paragraph 13 and paragraph 14 as amended shall be incorporated into the Amended Judgment.

The effect of the Circuit Court's order was to award to McCandless the property that the jury had found the Kaikaina Defendants had acquired through adverse possession.

B. Discussion

1.

Kalama Hui argues that the Circuit Court erred in (1) granting McCandless's JNOV Motion; and (2) ruling that the judgments entered in two prior lawsuits barred Kalama's claim for

11

adverse possession.[11]/ We conclude that the Circuit Court was correct in granting McCandless's JNOV motion.

We review the Circuit Court's ruling on McCandless's JNOV Motion under the following standards:[12]/

> It is well settled that a trial court's rulings on directed verdict or JNOV motions are reviewed de novo. Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
>
> In deciding a motion for directed verdict or JNOV, the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and either motion may be granted only where there can be but one reasonable conclusion as to the proper judgment.

Nelson v. Univ. of Hawaii, 97 Hawai'i 376, 393, 38 P.3d 95, 112

---

[11]/ We note that the Circuit Court's specific ruling was that the judgments entered in the two prior lawsuits established that the 1930 Deed was valid and enforceable, and not that they barred the Kaikaina Defendants' claim of adverse possession.

[12]/ At the time that McCandless filed its JNOV Motion, Hawai'i Rules of Civil Procedure (HRCP) Rule 50(b) (1972) provided:

> (b) *Motion for judgment notwithstanding the verdict.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

HRCP Rule 50 was subsequently amended to refer to "motion for judgment as a matter of law" and "renewed motion for judgment as a mater of law" instead of "motion for directed verdict" and "motion for judgment notwithstanding the verdict," but the change in terminology was not intended to result in a substantive change of existing Hawai'i law. Nelson v. Univ. of Hawai'i, 97 Hawai'i 376, 392 n.14, 38 P.3d 95, 111 n.14 (2001).

(2001) (brackets and citations omitted; block quote format changed).

2.

It is not clear from the jury's special verdicts whether the jury found that the paper title holder against whom the Kaikaina Defendants had acquired the 16.9 acres by adverse possession was the Medeiros Defendants or McCandless. As noted, the 1899 Amalu Deed purported to convey 340 acres from Kaikaina to Elizabeth K. Amalu, the Medeiros Defendants' predecessor in interest. If the jury construed the 1899 Amalu Deed as conveying a full 340 acres, Kaikaina would have conveyed the remainder of his entire 1/20 share, because at the time of the conveyance, it was believed that a 1/20 share consisted of 328.9 acres. However, Kaikaina subsequently conveyed 2 acres in 1911 to Beni Paauhau, the Kaikaina Defendants' predecessor in interest, and Kaikaina thereafter in 1923 deeded his "entire interest" in the Subject Property to his daughter Monika Paauhau, who was McCandless's predecessor in interest.

The jury found that the Medeiros Defendants had acquired 300 acres by paper title or inheritance, and that the Kaikaina Defendants had acquired 2 acres by paper title, presumably based on the 1911 conveyance to Beni Paauhau, and 16.9 acres by adverse possession. The special verdicts, however, did not establish whether the jury found: (1) that the 1899 Amalu Deed conveyed all of Kaikaina's remaining interest to Elizabeth K. Amalu, in which case the Kaikaina Defendants would have adversely possessed against the Medeiros Defendants; or (2) the 1899 Amalu Deed only effectively conveyed 300 acres, an argument McCandless had previously made, leaving McCandless as the title holder of the 16.9 acres by virtue of the 1923 Deed and 1930 Deed, in which case the Kaikaina Defendants would have adversely possessed against McCandless.

We conclude that under either scenario, the Kaikaina Defendants, as a matter of law, could not assert a valid claim of

13

adverse possession. Accordingly, the Circuit Court properly granted McCandless's JNOV Motion.

In granting McCandless's JNOV Motion, the Circuit Court found that there was insufficient evidence to support the jury's verdict that the Kaikaina Defendants had acquired title to the 16.9 acres by adverse possession and also relied on the preclusive effect of the judgments in Equity No. 102 and Civil No. 103. In Smallwood v. City and County of Honolulu, 118 Hawai'i 139, 185 P.3d 887 (App. 2008), this court discussed the requirements for the preclusive doctrines of res judicata and collateral estoppel:

> Res judicata prohibits a party from relitigating a previously adjudicated claim or cause of action. Res judicata is applicable when: (1) the claim or cause of action in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; and (3) the parties to the present action are the same or in privity with the parties in the prior action. See, e.g., Bremer v. Weeks, 104 Hawai'i 43, 53-54, 85 P.3d 150, 160-61 (2004). Res judicata prohibits the relitigation of all grounds and defenses which might have been properly litigated in the prior action, even if the issues were not litigated or decided in the earlier adjudication of the subject claim or cause of action. Id. at 53, 85 P.3d at 160 (citations omitted).

> Collateral estoppel may preclude the relitigation of a fact or issue that was previously determined in a prior action on a different claim or cause of action between the same parties or their privies. Collateral estoppel only applies, however, if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment. See Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 264, 172 P.3d 983, 1008 (2007), citing Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999). Thus the test for collateral estoppel has four elements: (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment. Id.

Id. at 146-47, 185 P.3d at 894-95 (footnote and emphasis in original omitted). Collateral estoppel can also be raised defensively by one who was not a party to a prior suit against one who was a party. Dorrance v. Lee, 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999).

3.

We first address whether the Kaikaina Defendants established a valid claim of adverse possession, assuming that McCandless was the title holder of the 16.9 acres in question. We conclude that the Kaikaina Defendants did not establish a valid claim of adverse possession against McCandless.

In 1940, Monika Paauhau filed a petition against L.L. McCandless to set aside the 1930 Deed in Equity No. 102.  In the petition, Monika Paauhau, who was represented by counsel, alleged that the 1930 Deed was obtained through fraud and sought to have the 1930 Deed canceled and the property conveyed back to her. L.L. McCandless filed an answer denying the allegations of fraud. Monika Paauhau died on March 1, 1947, and on August 19, 1949, Equity No. 102 was dismissed with prejudice for want of prosecution.

On August 1, 1955, McCandless's predecessors in interest sued to evict members of the Paauhau family, who had remained on the property after Monika Paauhau's death, as trespassers in Civil No. 103.  The Paauhau family members did not appear in the case and default judgment was entered against them on October 3, 1955.  Subsequently, a writ of possession was issued on October 14, 1955, and the Paauhau family members were evicted.  Kalama Hui does not dispute that the Kaikaina Defendants were in privity with Monika Paauhau in Equity No. 102 and with the defaulting defendants in Civil No. 103.

Under Hawaiʻi law, a dismissal with prejudice "is an adjudication on the merits of all issues that were raised or could have been raised in the pleadings."  Pedrina v. Chun, 906 F. Supp. 1377, 1401 (D. Haw. 1995).  A dismissal with prejudice for failure to prosecute is a decision on the merits that has res judicata effect.  Lundburg v. Stinson, 5 Haw. App. 394, 400, 695 P.2d 328, 334 (1985).  A judgment by default constitutes "a binding adjudication of all the rights of the parties embraced in the prayer for relief which arise from the facts alleged in the

15

complaint." <u>Matsushima v. Rego</u>, 67 Haw. 556, 599, 696 P.2d 843, 845 (1985).

In Equity No. 102, Monika Paauhau claimed that the 1930 Deed, which conveyed all of her and her husband's interest in the Subject Property to L.L. McCandless, was invalid. In Civil No. 103, the plaintiffs, who were McCandless's predecessors in interest, alleged in the complaint that pursuant to the 1930 Deed, L.L. McCandless had acquired all of Monika Paauhau and J.K. Paauhau's interest in the Subject Property; that the defendants, Monika Paauhau's children and heirs, entered upon the premises and took possession without authorization; and that plaintiffs hold legal title and were entitled to immediate possession of the premises. In their prayer for relief, the plaintiffs asked for a judgment granting them the right to immediate possession of the Subject Property, a writ of possession, and damages for the loss of rents and profits. The default judgment entered by the court granted plaintiffs the requested relief.

We conclude that the judgments entered in Equity No. 102 and Civil No. 103 have preclusive effect and bar the Kaikaina Defendants from contesting that the 1930 Deed was validly made and enforceable and that McCandless's predecessors in interest had a superior right to possession of the disputed premises than the Kaikaina Defendants' predecessors in interest. From 1898 to 1973, the period for adverse possession in Hawai'i was ten years. <u>See</u> <u>Morinoue v. Roy</u>, 86 Hawai'i 76, 81 n.6, 947 P.2d 944, 949 n.6 (1997). To acquire title by adverse possession, a party was required to establish, by clear and positive proof, actual, open, notorious, hostile, continuous, and exclusive possession for the ten-year period. <u>Id.</u> at 81, 947 P.2d at 949; <u>Matsuo v. Texeira</u>, 34 Haw. 679, 681 (Hawai'i Terr. 1938); <u>Albertina v. Kapiolani Estate, Ltd.</u>, 14 Haw. 321, 325 (Hawai'i Terr. 1902). In addition,

> a tenant in common claiming by adverse possession must prove
> that he acted in good faith towards the cotenants during the
> statutory period. In most circumstances, this requirement
> of good faith will in turn mandate that the tenant claiming

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

> adversely must actually notify his cotenants that he is
> claiming against them. In the following exceptional
> circumstances, however, good faith is satisfied by less than
> actual notice: where the tenant in possession has no reason
> to suspect that a cotenancy exists; or where the tenant in
> possession makes a good faith, reasonable effort to notify
> the cotenants but is unable to locate them; or where the
> tenants out of possession already have actual knowledge that
> the tenant in possession is claiming adversely to their
> interests. In these limited circumstances, the notice
> requirement will be satisfied by constructive notice and
> "open and notorious possession".

City and County of Honolulu v. Bennett, 57 Haw. 195, 209-10, 552 P.2d 1380, 1390 (1976).

Because Monika Paauhau and J.K. Paauhau were the grantors and reserved a life estate in conveying their interest in the 1930 Deed, their continued presence on the Subject Property was not adverse or hostile to L.L. McCandless, at least until Monika Paauhau filed suit in 1940 to cancel the 1930 Deed. See Wiedrich v. Howard, 131 N.E.2d 508, 510-11 (Ill. 1956); Jackson v. Genecov, 471 S.W.2d 589, 593-94 (Tex. Civ. App. 1971); James Harvey Ramsey Estate, Inc. v. Pace, 467 So.2d 1202, 1208 (La. Ct. App. 1985). However, Monika Paauhau's filing of her suit and L.L. McCandless's denial of its allegations tolled the running of any period of adverse possession until the final judgment was entered. See Taylor v. W.C. Belcher Loan & Mortg. Co., 265 S.W. 403, 405 (Tex. Civ. App. 1924); Rosencrantz v. Shields, Inc., 346 A.2d 237, 245 (Md. Ct. Spec. App. 1975).

The judgment dismissing Equity No. 102 with prejudice was entered on August 19, 1949. The period from 1949 until the Kaikaina Defendants' predecessors in interest were evicted in 1955 as a result of Civil No. 103 was 6 years, less than the required statutory period. Thus, if McCandless was the title holder of the 16.9 acres in question, the Kaikaina Defendants could not establish a valid claim of adverse possession against McCandless.

Kalama Hui argues that we should not give preclusive effect to the prior judgments because the Kaikaina Defendants' predecessors in interest did not have a full and fair opportunity

17

to litigate the relevant issues in Equity No. 102 and Civil No. 103. See Pele Defense Fund v. Paty, 73 Haw. 578, 600, 837 P.2d 1247, 1261 (1992). We disagree. Whether the 1930 Deed was validly made and enforceable was the central issue in Equity No. 102, and the right to possession of the disputed premises was the dispositive issue in Civil No. 103. Monika Paauhau was represented by counsel when she filed her petition in Equity No. 102, and the case lasted nine years before it was dismissed for failure to prosecute. The judgment in Civil No. 103 reflects that the defendants were duly served with process but failed to make any appearance. The record does not support Kalama Hui's claim that the Kaikaina Defendants' predecessors in interest lacked a full and fair opportunity to litigate the relevant issues in Equity No. 102 or Civil No. 103.

4.

We now address whether the Kaikaina Defendants had a valid claim of adverse possession, assuming that the Medeiros Defendants or their predecessors in interest were the title holder of the 16.9 acres in question. Because the Medeiros Defendants or their predecessors in interest were not parties to Equity No. 102 and Civil No. 103, the Medeiros Defendants were not bound by those decisions. However, the Kaikaina Defendants remained bound by the judgments in those cases and were precluded from contesting that the 1930 Deed was validly made and enforceable.

Under the 1930 Deed, Monika Paauhau and J. K. Paauhau transferred all of their right, title, and interest in and to the Subject Property to L.L. McCandless, subject to the reservation of a life estate. By virtue of the 1930 Deed, any right to adverse possession acquired by Monika Paauhau, J.K. Paauhau, and their successors in interest would inure to the benefit of McCandless. See Kainea v. Kreuger, 31 Haw. 108, 115 (Hawai'i Terr. 1929) (stating that "the privity required to constitute continuous adverse possession may be effected by any conveyance, agreement, or understanding which has for its object a transfer

18

of the rights of the original entry"); <u>Ryan v. Tanabe Corp.</u>, 97 Hawai'i 305, 312, 37 P.3d 554, 561 (App. 2002) ("[T]he possession of a tenant [(including a tenant for life)] inures to the benefit of his or her landlord and constitutes the possession of the landlord for the purpose of securing to the latter the benefits of adverse possession . . . ." (brackets omitted)). Accordingly, if the Kaikaina Defendants had acquired title through adverse possession as against the Medeiros Defendants, such title would belong to McCandless as a result of the 1930 Deed. In any event, we further conclude that the evidence adduced at trial was insufficient to show that the Kaikaina Defendants had satisfied the requirements for acquiring title through adverse possession against the Medeiros Defendants or their predecessors in interest.

5.

Therefore, regardless of whether McCandless or the Medeiros Defendants had paper title to the 16.9 acres in question, the Kaikaina Defendants, as a matter of law, did not establish a valid claim for adverse possession. Accordingly, the Circuit Court did not err in granting McCandless's JNOV Motion.[13]/

II. The Medeiros Appellants' Appeal

After the trial to quiet title on the undivided shares in the Subject Property was completed, the Circuit Court appointed a commissioner to assist the parties in partitioning the Subject Property. The Commissioner filed several reports and recommended a partition of the Subject Property, which the Circuit Court approved. Among the costs incurred were the costs

---

[13]/ After granting McCandless's JNOV Motion, the Circuit Court awarded the 16.9 acres, apparently with some adjustment based on the modern survey, to McCandless. The Medeiros Defendants do not appeal the grant of this property to McCandless, presumably because they agreed, pursuant to their settlement agreement with McCandless, to quitclaim any interest they had in such property to McCandless. In any event, having concluded that the Circuit Court properly determined that the Kaikaina Defendants, as a matter of law, were not entitled to the 16.9 acres by adverse possession, the separate question of whether the Circuit Court properly granted the 16.9 acres, as adjusted, to McCandless is not before us.

19

of surveying the parcels that were partitioned within the Subject Property.

Based on the modern survey, the total acreage of the Subject Property involved in McCandless's quiet title action was 7,149.22 acres. The Subject Property was apportioned among the various parties into lots. According to the Medeiros Appellants, McCandless received about 98 percent of the partitioned area of the Subject Property.

The costs of the surveys for the lots partitioned to the Medeiros Defendants totaled $82,646.42. In its Order and Judgment Allocating Costs, the Circuit Court ordered that the Medeiros Defendants and McCandless each pay one-half of these survey costs or $41,323.21. In support of its decision, the Circuit Court found that "the 50-50 split of the survey costs reasonably approximate[d] the actual benefit received by [McCandless] and the [Medeiros Defendants] based on an allocation of costs based on the lengths of the boundaries surveyed that are common to [McCandless] and the [Medeiros Defendants]."

On appeal, the Medeiros Appellants argue that the Circuit Court erred in ordering the Medeiros Defendants to pay 50% of the survey costs for their partitioned lots, instead of requiring the payment of costs in proportion to the parties' respective percentage interest in the Subject Property. We conclude that the Circuit Court erred in allocating the survey costs.

HRS § 668-17 (1993) provides:

> All costs of the proceedings in <u>partition</u> shall be paid by the plaintiff in the first instance, but eventually by all of the parties <u>in proportion to their interests</u>, except such costs which may be occasioned by contests as to particular shares or interests, which shall be charged against the particular shares or interests involved and be paid as determined by the result of the trial of the particular issue.

(Emphasis added.)

McCandless argues that the Circuit Court had the discretion to equitably apportion costs among the parties by

20

defining the term "interests" as used in HRS § 668-17 to mean "the lengths of the common boundaries and the value and benefit of each party's share." We disagree. HRS § 668-17 falls under Chapter 668, which governs partitions of real estate. See HRS Chapter 668. In the context of partition, the term "interests" as used in HRS § 668-17 is most naturally and reasonably construed to mean the parties' proportionate interests in the partitioned property. Hawai'i case law supports this construction of "interests." See Lalakea v. Laupahoehoe Sugar Co., 35 Haw. 262, 296-98 (Hawai'i Terr. 1939) (stating that ordinarily costs are apportioned according to the parties' respective interests in the subject property because "all parties to the suit are presumed to be proportionately benefited [sic] by all of the steps in which costs are incurred."); Pioneer Mill Co. v. Ward, 34 Haw. 854, 856-59 (Hawai'i Terr. 1939)(allocating costs in a partition action to the parties "in proportion to their several interests in the property to be partitioned").

Even assuming arguendo that a court could allocate costs based on a factor other than the parties' proportionate interests in the partitioned property, the record in this case does not indicate any circumstances that would warrant deviating from allocating the survey costs at issue based on the parties' proportionate interests in the Subject Property. McCandless received the vast majority of the Subject Property and benefitted greatly from the partition. The partition enabled McCandless to divide the Subject Property between McCandless and the other parties, thereby extinguishing the undivided interests of the other parties, including the Medeiros Defendants, to the lion's share of the Subject Property that was allocated to McCandless. Under the circumstances of this case, the Circuit Court abused its discretion in ordering the Medeiros Defendants to pay 50 % of the survey costs for their partitioned lots.

We vacate the Circuit Court's Order and Judgment Allocating Costs to the extent that it ordered the Medeiros Defendants to pay 50% of the survey costs for their partitioned

21

lots.  On remand, the Circuit Court shall allocate the survey costs in proportion to the parties' respective interests.

### III.  Clarence Junior's Appeal

Clarence Junior appeals from the Amended Final Judgment with respect to its vesting of title to seven kuleana properties. Clarence Junior contends that the Circuit Court's orders and the Amended Final Judgment "that vested the final ownership of [the seven] kuleana in the names of certain individuals are inconsistent with the trial court's own findings and/or the record, and accordingly, are factually clearly erroneous and legally wrong."  Clarence Junior requests that the case be remanded to the Circuit Court for further proceedings as to the seven kuleana for clarification as to the vesting of the title to these properties.

Clarence Junior is the son of Clarence A. Medeiros, Sr. (Clarence Senior).  Clarence Junior is a member of the Medeiros Defendants.  The Medeiros Defendants were represented by Mark Van Pernis, Esq. (Van Pernis) during the trial proceedings and are represented by Van Pernis on appeal.  The record reflects that Clarence Senior, who was also a member of the Medeiros Defendants, died during the trial proceedings and that after his death, disputes arose among various members of the Medeiros Defendants.  This prompted Van Pernis to file motions to withdraw, which were denied by the Circuit Court.  Although Clarence Junior apparently remained part of the Medeiros Defendants represented by Van Pernis, Clarence Junior also separately retained his own lawyer, Michael J. Matsukawa, Esq. (Matsukawa), who filed pleadings on Clarence Junior's behalf in the Circuit Court and represents Clarence Junior on appeal.

Clarence Junior identifies two groups related to the Medeiros Defendants that were recognized by the Circuit Court as follows:  (1) the Parker-Medeiros Heirs, a subset of the Medeiros Defendants; and (2) the Medeiros Titleholders Defendants, which includes members of the Medeiros Defendants but also excludes certain members of the Medeiros Defendants who disclaimed their

interest in the Subject Property during the litigation. The Amended Final Judgment vests ownership of certain kuleana properties in a group of individuals identified therein as the "Medeiros Titleholder Defendants," who are the same individuals referred to in this Memorandum Opinion as the "Medeiros Appellants."

The Circuit Court bifurcated the trial to separate claims involving undivided interests in the Subject Property from claims involving distinct kuleana parcels within the Subject Property. The trial of the claims related to the undivided interests was held first. During that trial, McCandless and the Medeiros Defendants reached a settlement, which provided for McCandless to convey designated properties, and kuleana therein, to the Medeiros Defendants and for the Medeiros Defendants to quitclaim their interest in all other portions of the Subject Property to McCandless. The seven kuleana at issue in Clarence Junior's appeal were in Settlement Area "A", and the settlement agreement provided that McCandless agreed "to convey and quitclaim to [the Medeiros Defendants] or [the Medeiros Defendants'] designee(s)" the kuleana within Settlement Area "A".

Pursuant to the settlement agreement, McCandless and the Medeiros Defendants filed a joint motion for summary judgment. The Circuit Court granted the motion, and Van Pernis, on behalf of the Medeiros Defendants, drafted the orders concerning title to the seven kuleana properties that Clarence Junior challenges on appeal.

Clarence Junior contends that during the trial on the claims involving undivided interests in the Subject Property, deeds executed in 1988, in which Clarence Senior conveyed to Clarence Junior all of Clarence Senior's interest in kuleana within the Subject Property, including the seven at issue in this appeal, were admitted into evidence. Clarence Junior argues that the Circuit Court's orders and the Amended Final Judgment vesting ownership in the seven kuleana properties are erroneous as follows:

23

1.    As to Land Commission Awards 9453-B and 9501 (Point 1), the trial court erroneously failed to discuss and apply the two 1988 deeds that convey Clarence A. Medeiros, SR.'s interest in the kuleana.

2.    As to Land Commission Awards 7005 and 9568 (Point 2), the trial court erroneously vested title in Clarence A. Medeiros, SR. and Pansy Medeiros[14/] even though the trial court found that the larger Medeiros Group [(the Medeiros Defendants)] and Clarence A. Medeiros, SR. and Pansy Medeiros as a whole owned the kuleana together.

3.    As to Land Commission Award 9457-C and 9500-C (Point 3), the trial court erroneously vested title in the larger Medeiros Group [(the Medeiros Defendants)] even though the trial court found that the smaller subset Parker-Medeiros Heirs and the Medeiros Group [(the Medeiros Defendants)] as a whole owned the kuleana together, erroneously eliminated Clarence A. Medeiros, SR. as a "Title Holder Defendant" and failed to discuss and apply the two 1988 deeds that convey Clarence A. Medeiros, SR.'s interest in the kuleana.

4.    As to Land Commission Award 9569 (Point 4), the trial court erroneously eliminated Clarence A. Medeiros, SR. as a "Title Holder Defendant" and failed to discuss and apply the two 1988 deeds that convey Clarence A. Medeiros, SR.'s interest in the kuleana.

(Emphasis in original.)

In response to Clarence Junior's opening brief, Van Pernis filed a declaration in which he states that he is the attorney of record for "the Medeiros Defendants, including the Medeiros Titleholder Defendants." Van Pernis further states in his declaration as follows:

2.    One of my clients, being "Defendant/ Counterclaimant/Appellant Clarence Medeiros, Jr.", has separately and individually filed an appeal in this case through his own separate attorney Michael J. Matsukawa, Esquire, who has been known as a "sub-attorney" for Mr. Clarence Medeiros, Jr. in this case after appearing after the verdicts and judgments quieting title to subject properties and during the partition portion of the case thereafter.

3.    Mr. Clarence Medeiros, Jr. has recently filed before this Honorable Court Defendant/Counterclaimant/ Appellant Clarence Medeiros, Jr.'s Opening Brief.

4.    The positions advocated by Mr. Clarence Medeiros, Jr. in has [sic] above referred to individual appeal may be adverse to other Medeiros Defendants or Medeiros Titleholder Defendants.

---

14/ Clarence A. Medeiros, Sr., and Pansy Medeiros were husband and wife.

24

5.     Due to obvious conflicts of interest, I cannot appear or advocate any position for my clients in respect to the position my client Mr. Clarence Medeiros, Jr. may be taking in his said appeal.

6.     I have previously informed all my clients in writing of this situation, the separate appeal of Mr. Clarence Medeiros, Jr., that I am unable to represent them or take any position as to that appeal due to conflict of interest, and advised them to seek separate counsel in that regard.  I am also providing a copy of this Declaration to each of them.

No opposition to Clarence Junior's opening brief was filed in this appeal by any member of the Medeiros Defendants or the Medeiros Appellants, or any other party.

Our review of the record substantiates the existence of the discrepancy between, and the ambiguity created by, the Circuit Court's findings and its orders and the Final Amended Judgment which Clarence Junior identifies in his points of error and argument.  In addition, we have not been directed to, and have not located, any portion of the record in which the parties or the Circuit Court address the validity of the 1988 deeds between Clarence Senior and Clarence Junior or their effect on the vesting of title in the seven kuleana properties.  In light of these circumstances and the absence of any opposition to Clarence Junior's appeal, we vacate the Amended Final Judgment to the extent that it vests title in the seven kuleana properties, and we remand the case for a clarification by the Circuit Court of its basis for determining the titleholders for these properties and, if necessary, a redetermination of the appropriate titleholders.  On remand, the Circuit Court may wish to revisit the question of whether Van Pernis has a conflict of interest that affects his ability to properly represent his clients.

CONCLUSION

For the foregoing reasons, we vacate the Order and Judgment Allocating Costs to the extent that it ordered the Medeiros Defendants to pay one-half of the survey costs or $41,323.21.  We also vacate the Amended Final Judgment to the

extent that it vests title in the seven kuleana properties challenged by Clarence Junior on appeal. We affirm the Amended Final Judgment in all other respects. We remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, November 9, 2011.


On the briefs:

Mark Van Pernis
(Van Pernis - Vancil)
for Defendants/Counter-Claimants/
Appellants Pansy Medeiros, et al.

Michael J. Matsukawa
for Defendant/Counter-Claimant/
Appellant Clarence A. Medeiros, Jr.

Michael W. Gibson
Michael R. Vieira
for Plaintiffs/Counter-Defendants/
Appellees McCandless Land
and Cattle Company and
Elizabeth M. Stack

Kevin P.H. Sumida
Anthony L. Wong
(Sumida & Tsuchiyama, LLLC)
for Defendant/Appellant
Genevieve Ilima Alani Shito

Joseph S.Y. Hu
for Defendant-Appellant Joseph Kanai
Kalama, through his successor in
interest Kalama Hui, LLC

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge